CHANCERY.

# Williams' Adm'r. and Heirs *vs* Starke & Ewing.

*Case 65.*

ERROR TO THE WASHINGTON CIRCUIT.

*Rescision of contracts. Trustee. Vendor and Vendee.*

*December 24.*

JUDGE MARSHALL delivered the Opinion of the Court.

The question stated.

THE principal question in this case is, whether Ewing, having purchased a tract of land from Starke with a knowledge that Starke had previously contracted to sell and convey the same land to Williams, should be compelled, under the circumstances hereafter to be stated, to

surrender his purchase to the heirs of Williams, in whose name with that of the administrator, the suit was revived after his death.

Before Ewing purchased, Williams had, on the alleged ground of Starke's refusal to deliver possession according to the contract, and for other alleged reasons, openly rejected the purchase, and refused to perform on his part, which was known to Ewing; and on the 29th of October, 1832, within ten days after Ewing's purchase, Williams filed this bill praying for a rescision and for repayment of a small part of the purchase money alleged to have been paid. Under these circumstances the purchase of Ewing, who had nothing to do with the nonperformance of the contract between Starke and Williams, cannot be regarded as fraudulent; and it is at least questionable whether Williams would have been permitted to defeat Ewing's purchase in the first instance, since it would seem to have been made upon the faith of Williams's rejection of his own contract.

But Starke, by his answers to Ewing's bill filed in October, 1833, and May, 1834, professed an ability and willingness to comply with the sale to Williams, upon his complying with the terms of the contract on his part, and protested against a rescision, and by an amended bill filed in May, 1836, Williams professes himself willing to complete the contract, and prays for a specific execution. In answer to which, Starke alleges that he had sold the land to another, and could not execute the contract with Williams. Ewing was afterwards made a defendant, and relief was prayed against him on the ground of his knowledge of the sale to Williams, and on the further ground that the answer of Starke, offering to complete that sale, was filed with the knowledge and consent, and by the advice of Ewing; and it is now contended that Ewing's subsequent refusal to give up his purchase, when more than two years after Starke's first answer was filed, the complainant says he is willing to take the land, is inequitable and unjust, if not fraudulent.

Looking to the evidence, we think there is no reason to doubt that when Ewing assented to Starke's offer of

WILLIAMS' AD'R.
AND HEIRS.
vs
STARKE & EWING.

A vendee of land openly threatening to sue for a rescision and then coming into chancery for a rescision of a contract for the purchase of land, will not be permitted to change the prayer of his bill and claim a specific execution thereof to the prejudice of a subsequent purchaser—

Though such purchaser may have professed in his answer a willingness to surrender his purchase, if the complainant, after such answer filed, delay for years to signify his willingness to accept a specific execution, and then, after the land had risen in value, &c. amended, signifying his willingness to perfect the contract—the last payment having fallen due, and being still unpaid—it is trifing with the contracts—

W. purchased a tract of land of S. paid $100 of the price, in a few days publicly threatened to sue for a rescision—E. apprised of these facts, purchases the land of S. and gets the possession; W. then files his bill for rescision, Oct. 10, 1832, S. files his answer in Oct. 1833, and

WILLIAMS' AD'R.
.AND HEIRS.
vs
STARKE & EWING.

with the assent of E. professes a willingness to execute the contract; in May, 1836, W. files his amended bill praying a specific execution: the last payment having become due and not made, and no note or security given—held that W. had no right to claim a conveyance, having trifled with his contract, and the land risen in value in possession of E.

completing the contract with the complainant, he was in fact, indifferent about his own purchase, and willing to give it up; and even if this were not so, we should not doubt that if, in consequence of that offer, and as soon as it was made or within reasonable time, the complainant had paid his money or entered into an obligation therefor, or perhaps if he had merely withdrawn his prayer for a rescision, and accepted the offer of a specific execution and prayed for it, neither Starke nor Ewing should have been permitted to retract. But regarding the offer of Starke as the offer of Ewing, the failure of Williams to accept it in reasonable time might properly be considered by Ewing as a refusal—it was in point of law a refusal. Williams had no right, in consequence merely of such an offer, to hold the execution of Ewing's contract in suspense for an indefinite period, until he should see whether new circumstances might not arise which would induce him to change his own determination and accept the execution of his own contract which he had rejected in the country, and for the rescision of which he had sought the aid of the Court. Nor had he a right to suppose that Ewing would, in consequence of an unaccepted offer, feel bound to discontinue at once the enjoyment of such rights as he had under his purchase, or suspend the performance of any duty imposed upon him by its terms. The law did not require this of him, nor did it require him either to renew or to continue his offer; nor is it regarded in view of the law as being continued, without any actual renewal of it, after a reasonable opportunity for its acceptance has been allowed, without any indication that it was or would be acceded to.

When, therefore, after the lapse of more than two years from the offer of Starke in his first answer, when in the interval, Ewing had rightfully gone on in improving the land, and in paying the instalments of the purchase money as they came due; and when from extraneous causes, the value of the land had more than doubled itself, Williams, under the pretext of accepting Starke's offer, indicated for the first time a willingness to take the land, and abandoning his prayer for a rescis-

ion, prayed for a specific execution; it was too late for him to affect the rights of Ewing by thus shifting his own position. To say the least of it, Ewing was not then bound by his offer made through Starke two years before; and the same circumstances which had operated to change the determination of Williams, might be allowed to have a similar effect upon the will of Ewing, even if there had not been additional circumstances affecting his choice, which could not be disregarded either by himself in making it freely, or by a Court of Equity in compelling it. Independently of his identification with the land by his long enjoyment of it, by improvements which he had made, and by the incorporation of his own labor with it, he had rightfully paid his money for it, and owing to circumstances which need not be detailed, his only probable source of remuneration, if his purchase were abandoned or taken from him, would have been the personal ability of Starke, who was in an embarrassed condition if not insolvent. Under all these considerations, we are of opinion that when Williams filed his amended bill praying for a specific execution, and when he made Ewing a defendant, he had no equity to compel a surrender of Ewing's purchase, even if he could at that time have complied strictly with the terms of his own contract.

But before he filed his amended bill praying for a specific execution, in May, 1836, the day fixed in his contract with Starke for the final payment of the purchase money (the 1st of March, 1836,) had passed, and up to the filing of this amendment, he had not only made no payment (except of the $100 paid a few weeks after the date of his purchase) but had continually refused even to execute a note for the purchase money, with or without the security prescribed by the contract, and was praying for a rescision. In the mean time, before this change of attitude, the land had risen greatly in value, and we are not prepared to say, that even if Ewing's interest had not been involved, a court of equity should have enforced a specific execution against the consent of Starke, though he had in his first answers expressed a desire to have the contract complied with. For although it be

true that a court of equity does not in general regard time as of the essence of such a contract, it is also true in general, that the Court will not enforce a specific execution in favor of a complainant who has prevaricated and trifled with the contract; and it might not be inequitable to refuse it on the prayer of one who, after repudiating the contract upon trivial objections, and actually going into the Court for a rescision, and maintaining that attitude for years, and until after the time of final performance has expired, is induced by an increase in the value of the land, to change his attitude and pray for a specific execution.

Without pursuing the subject farther, we are of opinion that the Court properly refused to enforce the contract between Williams and Starke, and that there was no error in rescinding that contract.

Wherefore the decree is affirmed.

*McHenry* for plaintiffs; *Morehead & Reed* for defendants.